RAWLS, Judge.
Retherford appeals a judgment of conviction of attempted rape. A sentence of 10 years was imposed.
The facts in this case reflect not only the delinquent activities of juveniles but a complete absence of parental supervision. An “open” party was in progress in Panama City, Florida, on the night of December 26, 1969, at the home of one of the teen-age participants. Some twenty-five or thirty youngsters, of ages ranging from IS to 19, were in attendance during the evening. Of materiality here were six youngsters.
Carol, an 18-year-old community college student, who had earlier in the evening engaged in a hair-pulling contest with another girl (apparently stemming from an argument concerning Carol’s boyfriend), was alone in a bedroom around 10:00 o’clock on the night of the party. James Ray (18 years old) and Bridget (IS years old) joined Carol in the bedroom. Bridget testified that Carol was upset because her date had carried another girl home. Shortly thereafter, defendant (18 years old), David (17 years old) and Ricky (the host) joined the other three in the bedroom. These six were the remaining members of the party. After talking for awhile, Ray, Bridget, David and Ricky went to the adjoining living room leaving Carol and defendant alone in the bedroom. Approximately ten or fifteen minutes later Ricky, after hearing Carol tell Billy to leave her alone and hearing some “ruckus” in the bedroom, went into the bedroom, observed the two on the bed and left. A few minutes later Ricky again heard some “ruckus,” after which he opened the bedroom door, turned on the light and observed defendant on top of Carol on the floor. He testified that Carol was undressed and defendant told him to get out and close the door, which he did. At this point David went into the bedroom just as Carol walked out screaming, “Why didn’t you help me ?”
Carol and defendant were in the bedroom for approximately thirty minutes. Upon emerging, Carol’s hair was disarranged. One member testified that her blouse was torn and another that she did not have her blouse on. During the thirty minutes that Carol and defendant were in the bedroom none of the boys heard any screams for help. One did testify that he was afraid to go into the bedroom because defendant “had a knife outside ... I was afraid Billy might get mad at me and use the knife if he still had it, which I didn’t know.” [1] Bridget testified that she heard noises from the adjoining bedroom which sounded to her like Carol was trying to scream but that someone was choking her. Carol testified that defendant beat and choked her; that she screamed twice; she was never fully undressed; that defendant penetrated her a little bit and tried to make her take his organ in her mouth; that she did not know who turned the lights off or who shut the door. When Carol and the defendant walked back into *82 the living room, he accused her of oral copulation in the presence of other youngsters; she finally responded, “Yes, goddamn it, I did.”
A physician’s examination of Carol several hours later reflected findings that she had suffered a bruise over the left brow, the lower side of her jaw, and a small laceration at the back edge of her vagina. The physician further testified that Carol’s hymen had not been torn.
With the above factual background in mind, we reach appellant’s point on appeal. Defendant denied that Carol screamed for help or that she resisted his advances. He also denied choking her or the penetration of his organ into her vagina. The State then proceeded to impeach defendant’s testimony by examining him, over objection, concerning a pre-trial confession he had given to a deputy sheriff to the effect that he had achieved penetration. The trial court overruled the objection without ascertaining that the statement had been voluntarily obtained upon the ground that same was admissible for impeachment purposes. In view of the facts surrounding this episode, the statement was of great materiality.
Appellant’s attorney bases his position squarely on Miranda v. Arizona[2] and other federal cases. He then argues that the United States Supreme Court’s decision in Harris v. New York[3] is not applicable. If these federal opinions cited by appellant constituted the case law of this State upon the subject, we would have no recourse other than to affirm the judgment appealed. Harris clearly holds that once a defendant voluntarily takes the stand, his credibility may be impeached by use of prior conflicting statements even though these statements were procured outside the umbrella protection of Miranda warnings.
As appellee State commendably points out in its brief, we have solid Florida law upon the subject.[4] In Galasso,[5] the Florida Supreme Court held:
“Subsequent to Miranda numerous cases have brought into focus the dilemma caused by the question of whether tainted pre-trial statements can be used for impeachment purposes. A strong line of authority holds that such statements should be excluded for all purposes and that this was the principal import of the Miranda decisions. See Groshart v. United States [9 Cir., 392 F.2d 172], supra, and Jones v. State [Fla.App., 200 So.2d 574], supra.
“There is another line of cases that hold that when the defendant voluntarily takes the stand in his own behalf he takes his integrity with him and should not be allowed to complain when subjected to the same inquiries as other witnesses. This line of cases would permit the use of pre-trial statements secured in violation of the required Miranda warning to be used for the limited purpose of impeachment. See State v. Jackson, 201 Kan. 795, 443 P.2d 279 (1968) and May v. State, 211 So.2d 845 (Miss.1968).
“It is our belief that the first line of cases represents the better view. The adoption of an exclusionary rule has in its favor simplicity of operation. It serves as an additional inducement to law enforcement officers to follow the dictates of Miranda by taking from them *83 all hope that any useful advantage would be gained by their failure to give inadequate pre-trial warnings to the accused. When law enforcement officers know that their failure to give adequate pretrial warnings, provide counsel or otherwise follow the dictates of Miranda will absolutely preclude under any circumstances the use of any statement secured without such warnings, then the incentive will not be present for them to violate the constitutional rights guaranteed by Miranda.”
Apparently, the trial judge was not advised of the controlling pronouncement in Galas-so since, notwithstanding any issue of vol-untariness, the Florida Supreme Court had squarely held that Miranda tainted pre-trial statements could not be used for any purpose, even impeachment. Young v. State [6] was decided by the Florida Supreme Court on the day following the trial of the instant cause, and the court there reaffirmed its decision in Galasso.
So, the pivotal question is: Will the Supreme Court of Florida adhere to its pronouncements in Galasso and Young in light of the United States Supreme Court’s decision in Harris v. New York, supra. Such conjecture is not within the province of this court to resolve. The apex of our judicial system, in the absence of federal questions, is the Supreme Court of Florida. The recent decisional law rendered by Florida’s Supreme Court is clearly to the effect that defendant’s exculpatory statement was not admissible for impeachment purposes unless the trial court first ascertained that same was procured voluntarily.' Such was not done.
The question considered in this opinion is of great public interest in the rendition of justice to the citizens of every part of this State. We, therefore, pursuant to the provisions of Article V, Section 4(2), Constitution of the State of Florida, F.S.A., certify same to the Supreme Court.
The judgment of conviction appealed is reversed with directions to grant defendant a new trial.
Reversed and remanded with directions.
SPECTOR, C. J., and JOHNSON, J., concur.

. It was established that defendant did not have a knife in the bedroom.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966).

. Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971).

. In its brief appellee states: “It does not appear from appellant’s brief that he is aware of State v. Galasso, 217 So.2d 326 (Fla.1968), and Young v. State, 234 So.2d 341 (Fla.1970). Appel-lee would be remiss in his duty to this Court and fundamentally unfair to the appellant if he did not bring these cases to the court’s attention.”

. State v. Galasso, 217 So.2d 326, 329, 330 (Fla.1968).

. Young v. State, 234 So.2d 341 (Fla.1970).