575 So.2d 704 (1991)
Anthony BUCHANAN, Appellant,
v.
The STATE of Florida, Appellee.
No. 88-821.
District Court of Appeal of Florida, Third District.
February 12, 1991.
*705 Bennett H. Brummer, Public Defender, and Noel A. Pelella, Sp. Asst. Public Defender, for appellant.
Robert A. Butterworth, Atty. Gen., and Jacqueline M. Valdespino, Asst. Atty. Gen., for appellee.
Before NESBITT, FERGUSON and GODERICH, JJ.
GODERICH, Judge.
The defendant, Anthony Buchanan, appeals a final judgment of conviction and sentence for first-degree murder with a firearm and unlawful possession of a firearm while engaged in a criminal offense. We reverse his conviction and remand this cause for a new trial.
The defendant was indicted for first-degree murder and for unlawful possession of a firearm while engaged in a criminal offense. The defendant filed a motion to suppress evidence relating to and derived from the various photographic lineups shown to the witnesses. The defendant contended that the pretrial identification procedures were unnecessarily suggestive because only two of the six black males had a light skin tone and only his picture contained a number one symbol (# 1) in the background. The court denied this motion. The defendant moved to suppress testimony from witnesses identifying him, arguing that such testimony would be the product of the photographic lineup displayed to the witnesses, rather than their independent recollection of the events on the day the victim was killed. During the hearing on these motions, Detective Ratcliff testified that he had not seen the number one written on the wall behind the defendant in the picture used in the lineup, until the state had pointed it out. Ratcliff added that this was the only photograph he had of the defendant. Ratcliff testified that in the photographic lineup all but one of the black males had a light to medium skin tone. The court ruled that five of the men in the photographs could be found to have a light skin tone, and denied the motion to suppress the lineup.
Prior to opening statements, the defendant sought to exclude several photographs of the victim marked for identification, on the grounds that the photographs of the body were gruesome and would be inflammatory. The court ruled that all but one of the photographs would be admissible.
During the testimony of Doctor Rao, the assistant medical examiner who autopsied the victim's body, the state introduced into evidence photographs taken during the autopsy. The state introduced a photograph showing the exit wound of the bullet, which had been previously ruled inadmissible, since the court reversed its prior ruling. Rao stated that in her opinion, based on looking at the photographs, someone put a gun to the victim's head after he was on the floor.
George Berwick, Jr., the victim's neighbor, testified that he saw the defendant and a white woman running from the victim's apartment on the day the victim was killed. He stated he saw the defendant carrying a gun and that in the photo lineup the police showed him, only two of the six black men had a light skin tone. One of these was the defendant.
Darlene Earles, the defendant's girlfriend, testified that she was present when the defendant shot and killed the victim. Following Earles' testimony on direct examination, the defendant's attorney approached the court with a letter which he had just received from the defendant. In the letter, Earles apparently admits that she is going to lie on the stand and that she "got the defendant into trouble." Earles identified the document as a letter she wrote the defendant while he was in jail. *706 The court denied the defendant's request to publish the letter to the jury on the grounds that it was incomplete since a portion of it had been torn off and because it was self-serving. During a hearing outside the presence of the jury, Earles said she could not remember if there was any additional writing on the part that was torn off and that she did not tear it. The court did not allow the defendant to clarify Earles' recollection as to the missing portion.
During closing arguments, the state implied that the defendant had requested permission to marry Earles because of the marital privilege that would attach. Following closing arguments, the court, sua sponte, gave a curative instruction that the marital privilege did not apply to this case and should not be considered.
The jury returned verdicts of guilty as charged on both counts. The defendant was sentenced to life imprisonment, with a twenty-five year minimum, mandatory term of incarceration for the murder charge and to five years imprisonment for the unlawful possession of a firearm during the course of a felony. Orally, the court stated that the five year term was to run concurrent to the twenty-five year term. However, the written order reflects that the five year term is to run consecutive to the twenty-five year term.
The defendant appeals alleging that the trial court erred for the following reasons: (1) in suppressing evidence favorable to the defendant; (2) in denying the defendant's motion for mistrial based on the state's improper comment during closing argument; (3) in allowing the admission of evidence as to the pretrial and in-court identification of the defendant from a suggestive photographic lineup; (4) in allowing the admission into evidence of cumulative photographs of the crime scene and the victim's body; and (5) in entering a written sentencing order that differed from the sentence announced in open court.
The defendant contends that the trial court erred in excluding Earles' letter since the letter would have impeached Earles' testimony. The state argues that the trial court properly excluded the letter because it was incomplete and therefore could not properly be relied upon. We find that the trial court erred in excluding the letter.
Section 90.402, Florida Statutes (1987), provides that all relevant evidence is admissible, except as provided by law. A statement by the state's star witness that she is going to lie on the stand is certainly relevant, therefore, unless, another rule applies to exclude the letter, it should have been admitted.
"`Authentication' is the generic term for the process of proving the genuineness of writings". E. Imwinkelried, P. Giannelli, F. Gilligan & F. Lederer, Courtroom Criminal Evidence, § 401 (1987) [hereinafter Imwinkelried]. Before any writing may be admitted into evidence, its authenticity must be preliminarily proven. Yates v. Bass Ranch, 379 So.2d 710 (Fla. 4th DCA 1980); § 90.901, Fla. Stat. (1987). "The requirements of [authentication] are satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." § 90.901, Fla. Stat. (1987). Therefore, any writing offered in evidence should be accompanied by competent proof showing its genuineness. Mallory v. Edgar, 128 Fla. 812, 175 So. 863 (1937).
In the instant case, the state argues that under section 90.901, Florida Statutes (1987), the letter is inadmissible because its genuineness was not proven. Nevertheless, the genuineness of a writing may be established by the author's acknowledgment that he wrote it. Imwinkelried, supra, § 403, at 92; C. McCormick, Handbook of the Law of Evidence § 219 (3d ed. 1984) [hereinafter McCormick]. Earles admitted that she wrote the letter. The trial court should have permitted the defense to publish the letter to the jury once the defense had presented sufficient evidence of the letter's genuineness, see J. Wigmore, Evidence § 2129 (Tillers rev. 1983), despite the fact that Earles' letter was not in the same condition as when she mailed it. To be admitted into evidence, the letter does not have to be in exactly the same condition at trial as at the time in issue; it only has *707 to be in substantially the same condition. See McCormick, supra, § 667. Even radically altered evidence can still be admitted if its pertinent features remain unaltered. Imwinkelried, supra, § 501, at 92. Additionally, "the exhibit may still be admitted if the changes can be explained, and they do not destroy the evidentiary value of the object." Comment, Preconditions for Admission of Demonstrative Evidence, 61 Nw.U.L.Rev. 472, 484 (1966).
The trial judge did not permit the defense attorney to voir dire Earles concerning the missing portion of the letter. The writing was highly relevant and if Earles would have been permitted to testify that the tear did not substantially change the writing, the letter would have been admissible evidence. The tear served only to reduce the probative value of the evidence and created a jury question as to its credibility and weight. See United States v. Davis, 780 F.2d 838 (10th Cir.1985).
As to the trial court's finding that the letter is self-serving, the defense was correct in its response that the letter is not self-serving as it was written by the state's witness. The rule of law is that an unanswered letter, not part of mutual correspondence, is self-serving and inadmissible in favor of the writer as evidence of facts contained therein. A.B. Leach & Co. v. Peirson, 275 U.S. 120, 48 S.Ct. 57, 72 L.Ed. 194 (1927). For these reasons, we find that the trial court erred in excluding the letter. Accordingly, the defendant's conviction is reversed and the cause remanded for a new trial.
We will address some of the defendant's remaining contentions in order to prevent any of the errors from being repeated during defendant's new trial. The defendant next contends that the trial court erred in denying his motion for mistrial based on the state's improper reference to the marital privilege during closing argument. Although we are certain that this error will not be repeated, we reiterate that prosecutorial error alone does not automatically warrant a mistrial. See State v. Murray, 443 So.2d 955 (Fla. 1984). Any error committed by the state's comment was cured when the court gave the jury the instruction to disregard any reference to the marital privilege because it did not apply to this case. See Ferguson v. State, 417 So.2d 639 (Fla. 1982); Riley v. State, 367 So.2d 1091 (Fla. 3d DCA 1979). The defendant's contention that the instruction served to highlight the error is unsupported by the record. The defendant also contends that the state in its closing argument referred to evidence which was not presented to the jury. During closing argument, the state commented on the defendant's motion requesting an order for marriage. This document was admitted into evidence. Thus, the trial court did not abuse its discretion in denying the defendant's motion for mistrial and in giving a curative instruction.
Further, the defendant argues that the trial court erred in admitting the pre-trial and in-court identification testimony of witnesses where the police used unnecessarily suggestive procedures. However, the record does not reveal any attempt by defense counsel to object to such testimony during the trial. A party opposing admission of evidence must object to its admission at trial or the party cannot complain of its admission on appeal. Crespo v. State, 379 So.2d 191 (Fla. 4th DCA 1980), cert. denied, 388 So.2d 1111 (Fla. 1981). The objection must be made before the evidence is admitted and it must be renewed, notwithstanding a prior ruling on a motion to suppress. Fraterrigo v. State, 151 Fla. 634, 10 So.2d 361 (1942); Gaines v. State, 406 So.2d 523 (Fla. 4th DCA 1981); Jones v. State, 360 So.2d 1293 (Fla. 3d DCA 1978); Stanley v. State, 357 So.2d 1031 (Fla. 3d DCA), cert. denied, 364 So.2d 891 (Fla. 1978). In the instant case, the defendant filed a motion to suppress the photographic lineup and the in-court identification. The court denied the motion. However, during the trial George Berwick, Jr. testified, without objection, that the police showed him some pictures from which he was able to identify the defendant. Berwick also identified the defendant in court. Defense counsel did not object during trial, prior to the admission of the evidence, therefore, the issue is not preserved for appeal.
The appropriate test in determining whether to introduce an out-of-court identification *708 is: "(1) did the police employ an unnecessarily suggestive procedure in obtaining an out-of-court identification; (2) if so, considering all the circumstances, did the suggestive procedure give rise to a substantial likelihood of irreparable misidentification." Grant v. State, 390 So.2d 341, 343 (Fla. 1980), cert. denied, 451 U.S. 913, 101 S.Ct. 1987, 68 L.Ed.2d 303 (1981) (quoting Manson v. Brathwaite, 432 U.S. 98, 110, 97 S.Ct. 2243, 2250, 53 L.Ed.2d 140 (1977)). In the instant case, the defendant urges that the procedure used by the police was unnecessarily suggestive because only two of the photographs were of black males that have a light skin tone and that only the defendant's picture contains a number one, suggesting that he is the number one suspect. First, none of the witnesses which identified the defendant testified that the number one influenced their selection. The only testimony about the number one was from Detective Ratcliff; he testified that he had not noticed it until it was pointed out to him. Second, the contention that the defendant was the only black male in the lineup which had a light skin tone is unsupported by the record. We find that the trial court properly denied the defendant's motion to suppress the pre-trial and in-court identifications because the police did not employ unnecessarily suggestive procedures in obtaining the identifications.
Finally, the defendant claims that the trial court erred in admitting the pictures of the crime scene and of the victim because they were cumulative and gruesome. However, once again, defense counsel did not renew his objection when the pictures were moved into evidence. Thus, this issue is also not preserved for appeal. See Crespo v. State, 379 So.2d 191 (Fla. 4th DCA), cert. denied, 388 So.2d 1111 (Fla. 1980). However, we find that the trial court properly admitted the pictures of the crime scene and of the victim where none of the pictures were duplicates and where the pictures were necessary to prove the allegation that the defendant shot the victim while the victim was lying on the floor. In Young v. State, 234 So.2d 341, 347 (Fla. 1970), receded from on other grounds, State v. Retherford, 270 So.2d 363 (Fla. 1972), cert. denied, 412 U.S. 953, 93 S.Ct. 3020, 37 L.Ed.2d 1007 (1973), the court ruled that the fact that the photographs are gruesome is insufficient by itself to constitute reversible error. If the photographs have some relevancy, independently or as corroborative of other evidence, they may be properly admitted. Id. at 347-48. In the instant case, Rao testified that her opinion, that the victim was shot in the head after he was already lying down, could only be supported by the photograph that had been previously ruled inadmissible. Since that photograph is relevant in proving the allegation that the defendant shot the victim after he was already lying down, it was properly admitted.
Since the defendant's conviction is reversed, we do not need to address the trial court's error in entering a written sentencing order that did not conform with the sentence announced in open court.
Reversed and remanded for a new trial.
NESBITT, J., concurs.
FERGUSON, Judge (concurring).
I concur in the result based on the exclusion of material evidence and would not reach the merits of the issues which were not reserved for review by a timely objection.