RAMIREZ, C.J.
 

 Jesus Rodriguez appeals his final judgment of conviction and sentence for first-degree murder, kidnapping, burglary of a dwelling and aggravated stalking. Finding neither fundamental error nor an abuse of discretion, we affirm.
 

 I. Facts
 

 The State charged Rodriguez with the murder of his wife. The grand jury indicted him on (1) first-degree murder, (2) kidnapping, (3) burglary with an assault or battery, and (4) aggravated stalking. The evidence against him on the murder charge was mostly circumstantial, as his wife’s body was never found.
 

 The charges stem from a domestic dispute dating back to October of 2001, when Rodriguez’s wife Isabel petitioned for divorce. She obtained a restraining order against Rodriguez after she received a phone call from him threatening to kill her. Rodriguez was served on November 1, 2001. At trial, two witnesses, including the officer who served the injunction, testified that Rodriguez became very angry when he was served with the order and that he made threatening remarks to Isabel.
 

 On November 13, 2001, Isabel became missing. Judith Almeida, who was a tenant on Isabel’s property, testified that she received a call from Rodriguez asking her if she would be going to work the next morning and that she saw someone hiding behind a car on the property the next morning while taking out the trash. Rodriguez’s adult daughter, Rochelle, testified that she and Rodriguez had planned to take her car to his farm on the morning of November 13 for him to work on it. At Rodriguez’s farm, Rochelle noticed a fire burning on the property and that Rodriguez had scratches on his nose and was pressure cleaning his Lincoln Continental, which had been seen at Isabel’s house earlier in the day. Rodriguez’s girlfriend also testified that he did not have scratches on his body before he left the house that day, but did have scratches on his back and nose when he returned in the
 
 evening.
 

 On November 15, investigators transported Rodriguez’s Lincoln Continental to
 
 *755
 
 the medical examiner’s office for processing. The homicide detective that transported the vehicle testified that immediately upon opening the trunk, he noticed the smell of a decomposed body and the smell of a cleaning agent. The detective also testified that the entire trunk was soaked and was wet from condensation. On November 26, 2001, an investigating officer went to Isabel’s home to serve a search warrant and encountered Rodriguez on the property. Rodriguez invited the officer inside the home to show him the property, and told the officer that he need not worry about the restraining order because Isabel would never be coming back. Rodriguez was arrested on April 11, 2002. While the detective was preparing paperwork on the arrest, Rodriguez spontaneously stated that the police were mistaken about his motive for killing Isabel, namely that it was about money and not jealousy.
 

 Rodriguez testified on his own behalf at trial, admitting that he was at Isabel’s home on November 13 in violation of the restraining order. The jury found him guilty as charged on all four counts, and he was sentenced to life in prison for the murder and kidnapping counts, thirty years for the burglary count, and five years for the aggravated stalking count.
 

 II. Law
 

 On appeal, Rodriguez first argues that the prosecutor committed fundamental error in closing argument when she impermissibly shifted the burden of proof from the State to the defense by arguing that there was nothing in the jury instructions that required the State to have a body, or proof of how the victim died. The prosecutor stated during closing:
 

 There is nothing that says any of that. All it says in the jury instruction is, we have to prove that she is dead and we have to prove that he did it. Do any of you believe, if any of you believe, beyond a reasonable doubt that she is not dead, well, you know that I invite you go ahead and acquit him. If you believe beyond a reasonable doubt that she is not dead acquit him. But nobody can look at this evidence as a whole, you’re all smart people you all have common sense that’s why you’re on this jury. You’re not like him. He has no common sense.
 

 There was no objection to this statement, but Rodriguez argues that this constituted fundamental error. The Florida Supreme Court has stated:
 

 [Fjailing to raise a contemporaneous objection when improper closing argument comments are made waives any claim concerning such comments for appellate review. The sole exception to the general rule is where the unobjected-to comments rise to the level of fundamental error, which has been defined as error that “reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.”
 

 Mosley v. State,
 
 — So.3d —, 2009 WL 2045387 (Fla.2009) (quoting
 
 Simpson v. State,
 
 3 So.3d 1135, 1146 (Fla.2009)).
 

 We recognize that the prosecutor misstated the law. In
 
 Gore v. State,
 
 719 So.2d 1197 (Fla.1998),
 
 [1]
 
 the Florida Supreme Court recognized that it is error for a prosecutor to attempt to shift the burden of proof from the State to the defense.
 
 See also Northard v. State,
 
 675 So.2d 652, 653 (Fla. 4th DCA 1996);
 
 Clewis v. State,
 
 605 So.2d 974, 975 (Fla. 3d DCA 1992).
 
 *756
 
 What she should have said was that “if you do not believe beyond a reasonable doubt that the victim is dead, go ahead and acquit him.” There is no suggestion that the prosecution intentionally misstated that law. Furthermore, the misstatement could have been readily corrected with a curative instruction had the defense objected. For example, in
 
 Heinz v. State,
 
 615 So.2d 238, 289 (Fla. 3d DCA 1993), we affirmed a conviction after the prosecutor made an improper burden shifting argument where the defense objected and which the trial court immediately sustained with a cautionary instruction.
 
 Id.
 

 Nevertheless, Rodriguez argues that the misstatement improperly shifted the burden of proof regarding an essential element of the crime and affected the fairness of the trial, thus constituting fundamental error. We disagree.
 

 Rodriguez relies heavily on
 
 Murray v. State,
 
 937 So.2d 277 (Fla. 4th DCA 2006) to argue that the error here was fundamental. In
 
 Murray,
 
 however, the Fourth District Court of Appeal dealt with a judge that gave improper jury instructions that the defense had to prove self-defense beyond a reasonable doubt.
 
 Id.
 
 at 280. There is no improper jury instruction here. Furthermore, the misstatement of the law here occurred only once, during closing argument, and evidently went unnoticed until after Rodriguez was convicted and the transcript was examined.
 

 Given that the prosecution did not intentionally misstate the law, we view the improper remark in context. The misstatement was preceded by the prosecution stating that “we have to prove that she is dead ...” In her initial closing argument, the prosecutor argued that “there’s not a doubt in the world that Isabel Rodriguez is dead,” apparently a higher burden than “reasonable doubt.” Later she states that “[tjhere is no reasonable doubt that Isabel Rodriguez is dead.” In her rebuttal argument, after misstating her burden, she states that she does not have to prove how she died, “I just have to prove that she’s dead.” Later still, she admits that the defendant “doesn’t have to prove anything to you, that burden is mine.” She then goes over the jury instructions and states: “[bjefore you can find the defendant guilty of first degree premeditated murder [sic] State must prove the following three elements beyond a reasonable doubt. Number one, that the victim is dead. Generally we do have a body. You don’t have a body here. The State would submit to you that we have proved beyond a reasonable doubt that Isabel Rodriguez is dead.... ” Two pages later in the transcript, the prosecutor repeats that the State must prove beyond a reasonable doubt that the victim is dead. Five pages later, she states: “[a]nd the one thing that is proven beyond a reasonable doubt, and that is a doubt that you can attach a reason to, which has been proven beyond every reasonable doubt, that is he killed her.”
 

 During the jury instructions, because they contained lesser-included offenses, the judge charged the jury five different times that the State had to prove beyond a reasonable doubt that Isabel Rodriguez is dead. This was in addition to the standard instruction on reasonable doubt and burden of proof.
 

 Thus, we have a jury that is repeatedly told that the State had the burden to prove that Isabel Rodriguez was dead and one instance where the prosecution inadvertently misstated the State’s burden of proof. Consequently, we do not believe that the error here, to quote from
 
 Mosley, supra,
 
 “reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.”
 

 
 *757
 
 We decline to address the remaining issue raised on appeal as we conclude that it is meritless and/or harmless beyond a reasonable doubt.
 
 See State v. DiGuilio,
 
 491 So.2d 1129, 1135 (Fla.1986).
 

 III. Conclusion
 

 We affirm Rodriguez’s judgment of conviction and sentence.
 

 [1]
 

 . It should be noted that in
 
 Gore,
 
 the defendant objected to the prosecutor’s improper arguments.